Case No. 26-5070, Mark Kelly, United States Senator, representing the State of Arizona v. Pete Hegseth, in his official capacity as Secretary of Defense, et al., Appellant, Mr. Bailey for the Appellant, and Mr. Meiser for the Appellant. I'm trying to get my hearing aids adjusted. All right, Mr. Bailey, good morning. Your Honors, may it please the Court, John Bailey on behalf of the United States. I've asked to reserve a few minutes for rebuttal. Over 50 years ago, the Supreme Court in Parker v. Levy held that speech by a commissioned officer publicly urging enlisted personnel to refuse to obey orders which might send them into combat is unprotected under the most expansive notions of the First Amendment. The military's unique and fundamental need for obedience and discipline means that it may, consistent with the First Amendment, discipline its members for speech that undermines the effectiveness of response to command. Within the military community, that category of speech is unprotected. In 2022, this Court in Larrabee v. Del Toro held that military retirees are properly regarded as members of the armed forces, not civilians. The Court upheld Congress's extension of court-martial jurisdiction over military retirees. As the Court explained there, quote, military retirees unquestionably remain in the service and are subject to restrictions and recall. Despite those settled principles, the District Court resolved Captain Kelly's First Amendment claim by adopting a sweeping categorical rule, that for First Amendment purposes, retired officers are indistinguishable from civilians, such that the Constitution prohibits the military from imposing even administrative discipline for speech falling within Parker's court. Let me ask you, does the plaintiff have a, as a retired naval officer, does he have a commanding officer? Does he have a current command as a retired? No, does he have a commanding officer as a retired Navy officer? He's a retired officer? Have a commanding officer over him. I think in, not in active duty, I don't know if he has a... Well, isn't the President his commanding officer? Certainly, if he was to be recalled to active duty, he would have superior officers and a commanding officer. Absolutely. Go ahead. And as I said, the District Court's analysis was based on a categorical rule that retirees... I don't really see that on this record. It seems to me it's a little bit more simple than the way you are positing. Basically, as I read the papers that the government filed before Judge Leon, the government argued that the speech at issue here was unprotected under the First Amendment under Parker v. Levy. That was the argument that was made. And it seems to me that Judge Leon simply said that you're, we're on a preliminary injunction standard. And he said you're not likely to succeed on the merits that Parker v. Levy applies to this situation. And that's true because Parker v. Levy involves a active duty officer. Senator Kelly is a retired officer. And also the facts of Parker v. Levy are so different, where in that case, Levy actually, as a commissioned officer who was active duty, was saying that people should refuse orders to fight in Vietnam. And all Senator Kelly said was a truism, which is that you should decline to follow illegal orders. And nobody disputes that that's an accurate statement. So doesn't this just boil down to whether Parker v. Levy governs the situation? And if it does not, that's it. Like, the district court did not affirmatively adopt some standard that equates retired service members with civilians. All it did was reject the only argument the government made, which was under Parker v. Levy, this is unprotected conduct. That's all that we have before us. For your honor, so a few points in response. So we would disagree with that characterization of the district court's analysis. The district court by holding at several places that Captain Kelly's speech was fully protected under the First Amendment. The implication of that is that no military interest can justify even modest regulations of its member's speech simply because they're a retiree. As for Parker, we don't read anything in Parker to be limited to active duty service members. Sure, that was the particular factual content. I understand that that's your position, but what the district court did was just reject your argument that Parker v. Levy governs. And it did not explicate some new theory about military retirees equal civilians. It never said that. And there is a third possibility, which is that there's a different standard for military retirees. It's a third category. There are active duty, there are retirees, and there are civilians. But that was never sort of fleshed out because the government never made that argument. So all he had to do was reject the argument that he did make, which was that military retirees are equal to active duty ones. And the facts also are similar. Respectfully, your honor, I do not believe the position below. I do not believe the argument was made that retirees are equivalent to active duty service members. The argument was simply that the implication that you said Parker v. Levy, which is about active duty service members, that that applies here. So that implicitly equates active duty and retired service members. Your honor, we don't understand Parker v. Levy to be about active duty service members. We understand Parker v. Levy to recognize that the military may constitutionally regulate speech by its members that undermines the effectiveness of response to command. And you lump in retirees under whatever Parker v. Levy held, thereby equating active duty and retired service members, right? Your honor, we're simply saying that when we're in the military context, there are special principles that apply. And they're the same if you're active or if you're retired. That is not our position, your honor. That's not your position. Our position, at least for purposes of the core of Parker, speech counseling, disobedience to orders. We agree that that balance is always going to cash out in favor of the military and that that is unprotected. But Parker and then this court said in Priest, the broader standard is that speech that undermines effectiveness of response to command or endangers loyalty, discipline and morale in the military context. That's going to be unprotected. Parker's a specific application of that broader rule to the core of speech that undermines military discipline and order. But isn't the whole point here about what does Parker apply to? Does it apply to only active duty? Does it apply to active and retired? Because you don't think that it applies to civilians, do you? No, your honor. Our point is that Parker was recognizing a rule that First Amendment applies differently in the military context. And that's what we have here. But the district court's analysis, it eschewed the military context. By repeatedly stating that Captain Kelly's speech is entitled to the full protection of the First Amendment. So your position basically does not recognize that there could be a difference if it's a military retiree versus an active duty member. I want to be very clear about this, your honor. We do recognize that there could absolutely be, let's say under Article 88, a contemptuous words prosecution. We absolutely think that the First Amendment analysis would be different there for a retired officer versus an active duty service member. But when it comes to the specific kind of speech that was at issue at Parker, speech that is counseling disobedience to orders, that goes to the very heart of the military's interest in maintaining order and discipline over its members, we're saying that there, that balance is always going to cash out in favor of the military, whether you're active or retired. So in other words, then, whether you're active or retired, the standard is the same under Parker versus Levy. At least for that core category of speech, counseling disobedience to orders, which is a type of unprotected speech because it undermines good order and discipline. If this was if this was a if this was an action taken based off of Article 88, the contemptuous words, as I said, we would be fully willing to agree that the First Amendment analysis there would look different for a retiree. It is context dependent. This court has said that in Priest and I think that was implicit in Levy. The context is very important. I just think that everything you said to support what I previously started my line of questioning with, which is that you think that under Parker versus Levy, a military retiree is covered just like an active duty service member. And you relied only on Parker versus Levy to assert that what Senator Kelly Kelly did in this case is not protected under the First Amendment. And all Judge Leon did was reject your argument because we're a preliminary injunction standard. And it was and it was not. A likelihood of success in the merits for you to to offer this defense because. Number one, he's retired, so it's not clear what the standard should be for a retiree. And number two, the facts are so different that were before Judge Leon versus what was in Parker versus Levy. And that's all that we have to decide on appeal to uphold this injunction. No, Your Honor, respectfully, I think we have to ask was the district court's legal rule that it adopted to resolve this question. Can that rule can the preliminary injunction be affirmed based off that rule and the rule that he adopted that that retirees are as a matter of law, categorically indistinguishable from civilians? Where is that in the record that he held that retirees are categorically indistinguishable from civilians? He said repeatedly that Kelly's speech must be given the full protection of the First Amendment. It's the full protection of the First Amendment. And what that means is that the military has no interest in regulating his speech any more than it has an interest in regulating the speech of a civilian. It would completely nullify the nullify large parts of this court's decision in Larrabee. It would essentially mean that any UCMJ article that touches on speech as applied to retirees is automatically unconstitutional. And that can't be. So I don't think that that necessarily equates. Your whole argument is premised on the fact that he's equating military retirees with civilians. He never says that anywhere. And him rejecting your argument based on Parker versus Levy does not mean that he's equating military retirees with civilians. Your Honor, our Parker argument could be a third category, which nobody addressed, that there's a different standard for military retirees and a whole different legal analysis that nobody undertook. And at the least that counsels in favor of remand there. Our Parker and Parker argument was very clear that in the military context or special First Amendment rules that apply. And that was the argument that the district court rejected. And that can't possibly be right. Mr. Bailey, that your core argument is that counseling disobedience to lawful orders is a category of unprotected speech when uttered by anyone in the military, including someone who is retired. Yes, exactly. Yeah, that Parker. So just backing up. What are the lawful orders that Captain Kelly that that support the reprimand that Captain Kelly counseled service members to disobey? So I think the central letter speaks for itself here. This is a 60 through 100. And it it makes clear that this is not any one statement or any one utterance. This was a pattern of conduct and a series of public. But just help me be concrete. So what was the category of lawful order type of lawful order or any lawful order that you take all the circumstances that are mentioned in the century letter to counsel service members to disobey? As I said, this is a pattern of statements and it was the lawful orders at issue or orders made in the context of the National Guard deployments and also with respect to the counter narcotics operations. Orders to do what? I mean, it would be a series of orders related to those missions in order to deploy in order to deploy to your home base and then to deploy to a state, perhaps in the context of the National Guard. Orders to deploy. So Captain Kelly ordered active duty service members not to deploy. I'm saying that could be an example of the type of order that would be. I'm just trying to understand what are the orders that Captain Kelly is censured for having counseled service members to disobey? I think it's his own characterization in his press conference that he intended to cut them off at the past. That has no meaning other than stop the deployment, stop the National Guard from going into cities. It has no other meaning. Exactly, Your Honor. And at the least, we think that the secretary could reasonably determine that these statements in context based upon his military experience and judgment. I'm sorry, I don't follow where that, where is that in the record? I don't know what what we're talking about here. What statement is that? It's in his press conference. In the record? I'm not sure if you're referring to what's quoted in the censure letter, but I. Where is that in the record? I'd like to see because I don't know what we're talking about right now. Yes, Your Honor. I'm referring to JA63. It's also at JA99. It's the censure letter. So, where is this press conference in the record? If you could point it out, because I just don't know what we're talking about. I'd like to see it. Your Honor, the reference to the press conference, I believe the reference that Judge Anderson was making was to paragraph 5, at least, as the censure letter I have in front of me. So, throughout December 2025, you continued to accuse me and senior military officers of war crimes and to frame resistance to lawful orders as protecting against overreach. That's paragraph 5? Your Honor, I think it may have been the paragraph before that Judge Anderson was referring to. My point. Okay, so if we can, I'm just trying to understand what we're talking about. On November 20th, 2025, you issued a joint statement defending the video, that's the don't give us the ship video, and reinforcing your call for refusal of what you characterize as unlawful orders. On November 21st and 23rd, 2025, you criticized military leadership for, quote, firing admirals and generals and surrounding themselves with yes-men, asserting you would always defend the Constitution. And on November 25th, you stated that intimidation would not work and called your advice to refuse orders non-controversial. I don't see a reference to a press conference here. Did I miss something? Well, I'm looking at the CNN. Senator Kelly, U.S. military may have committed war crimes. I'm sorry, where in the record are we? It is JA-116, I think. This is a quote. The gist of the video was to urge service members, quote, not to answer the call if they were ordered to carry out such strikes. And the outrageous statement about using the city as training ground, when if anything, the National Guard, two of them, were shot, one of them killed, by a citizen. I'm so sorry, I just don't see this on page 116. So the orders, I take your answer to be that the lawful orders that Captain Kelly counseled, as to which Captain Kelly counseled disobedience, would be orders for National Guard members to deploy to American cities? Your Honor, I will say broadly, they're orders relating to the specific ongoing operations related to National Guard deployments, as well as the counter-narcotics operations, the boat strikes. I'm not saying they were... He's counseling National Guard members not to deploy to American cities, and counseling members of, is it the Navy that's involved, or in the counter-drug trafficking? I think generally counseling disobedience, yes. That was the Secretary's determination, which the district court didn't question. The district court accepted the Secretary's characterization of these statements. It did not engage in a line-by-line. No, I'm looking at the censure letter. I'm accepting the Secretary's characterizations as the basis of the censure. The difficulty is in identifying, because this letter doesn't identify specific orders, or types of orders, categories of orders, or statements that counsel disobedience to them. In fact, the text of the video that I take to be really the fulcrum of this entire case advises that service members have no obligation to obey unlawful orders. Is that correct? That was one of the references in the video. Nobody in the video says service members have a duty to disobey lawful orders. Our contention is not that any one statement in isolation... This is really big. You are not disagreeing that the video at issue, that is the fulcrum of this case, Senator Kelly never says the words, disobey lawful orders. That's uncontroversial. I understand you have a whole theory, but he doesn't say that. Not in isolation expressly. He doesn't say that those words.  Okay. He says you have a duty to disobey unlawful orders, right? Or you don't need to disobey unlawful orders. You can refuse illegal orders. You can refuse illegal orders. That is something that's taught at Annapolis to every cadet, right? Absolutely, Your Honor. That's why the context is important. And because it's taught at Annapolis to every cadet, there is only one reason why you would say that. And that is if it was with the specific intent to influence active duty service members. The only reason he would say that is with a specific intent to influence active duty service members to do what? Counsel disobedience to orders that he has characterized as unlawful. So if there's a class at Annapolis during the period in question where professors are telling cadets. You need not obey unlawful orders. You have a duty to disobey unlawful orders. That means they're telling them not to obey deployments to US cities or not to obey targeting of suspected drug runners. Not at all. Our point is that this was not abstract legal education. Captain Kelly was not purporting to give a speech in Annapolis on military law. How do we know that? This was the secretary's determination based off a review of a pattern of conduct and a series of public statements. He determined that was his inference, his characterization that the statements were made with the intent to counsel disobedience. And those findings went unchallenged by the district court. The district court accepted those and moved on to its categorical rule. We have an obligation to defer to the military on matters of military discipline, on chain of command, on what's disruptive. But we also have an obligation in a First Amendment case to determine what the statements are, what the speech at issue is. Are you arguing that we do not have that obligation in the context of the military? Our argument is somewhat different. Our argument is that that would have to be done in the first instance by the district court on remand. But because the district court's analysis did not probe the universe of statements, the universe of statements was not important to the district court. The district court says we accept the secretary's characterization as to the effects of the speech. And it said even so, there is just no way under the First Amendment for the military to take even modest administrative actions in response to it. But under both corporations, for many generations, it has been the rule that on a court of appeals, looking in a speech case, what is the speech? That we look at that independently. And everything that is at issue, all the speech that is at issue is recorded. There's no dispute about what was said. So then the question is, what does it mean? Right. And you don't have any case that says that when we're dealing with retired service members who have an ongoing connection to the military and maybe ordered to deploy, that the court of appeals no longer have to identify the meaning of the words, do you? You don't have any authority on that, do you? Well, Your Honor, we do think that the Shirley rule does not overcome whatever principle of BOSE might apply here, which we don't think does. But the Shirley rule is not about speech at all. It is about whether a preliminary injunction can be affirmed on a legal theory that wasn't embraced by the district court. No, but the legal theory of the district court is that the speech was protected. And we could affirm if we agree the speech was protected. And the district court talked about the circumstances. You can look at those circumstances. The question, the only fact that I'm asking you about now is what was said. Right. And it's not actually disputed what was said. Is it? I think Kelly, I think my friend on the other side has raised that dispute and is speaking to this court and is complaining. Well, because you argued that that Captain Kelly counseled service members to disobey lawful orders. And he never did say those words. Right. So you're saying there's an inference that when you look at Captain Kelly's speech in context, it amounts to counseling service members to disobey lawful orders. Am I right? We're saying that the secretary. Am I right? That is your theory, right? I mean, I'm sympathetically describing your theory. Yes, that is the secretary's inference. That is what we are arguing. The secretary has made that inference. And it's one that the district court didn't engage with. It didn't felt it needed the whole universe of statements. It didn't apply any special First Amendment principles. All it needed to know was that Kelly was retired. And to the extent this court thinks that the universe of statements that issue is a relevant matter or what level of deference might be required. Although the district court did not specifically parse the secretary's rulings and inferences, etc. He said, without the benefit of levy, defendants have no other arguments for how Senator Kelly's speech is unprotected under the First Amendment. So, basically, it's kind of back to you're relying only on levy. He's saying levy doesn't do the job for you. And levy doesn't do the job for you because it applies to active duty service members, but also because factually it is so different. I mean, here we have Senator Kelly saying, don't obey illegal orders. And that's completely different what happened in levy. And we also have the secretary saying that he meant to say the complete opposite of what he did say. Secretary says you are telling people to disobey lawful orders when Senator Kelly explicitly said, you don't have to obey illegal orders. I mean, I don't think that we have to accept that as correct or true. The district court never did either. He just didn't address it one way or the other. It would be, I think, astounding for us to just credit that unconditionally and not even address it when you relied on Parker versus levy and Parker versus levy is factually so different. We've already discussed the factual differences with Parker, but we think Parker recognizes a very long standing and basic rule that in the military context, the First Amendment is going to operate differently. That was, we relied on the specific application, but you keep a leading or overlooking the fact that there could and likely is a difference between military retirees and active service members as a general matter. Yes, but the district court didn't engage in that at all. The district court just said, no, there's no civilians. You didn't have to, because all you said was, this is covered by Parker versus levy. And he said, don't think so. And not likely to succeed on the merits of that claim because he's retired. And also the facts are so different. He didn't have to. Your Honor, to the extent you think that a different analysis, a different First Amendment analysis should be done, one that takes into account the First Amendment interest of the military. It's not before us because that wasn't litigated. You didn't say that. You didn't make that argument. You just only relied on Parker versus levy equating retirees with active service duty members. He rejected it. That's all that we need to address. And for that reason, the injunction should be vacated and it should be remanded for him to consider under the proper legal standard. How do you get to that from what I just said? Because the district court's legal rule is there. The rule that a retiree, simply by virtue of being a retiree, has the same First Amendment rights as a civilian. We already discussed that. He never held that. It's nowhere in his ruling. He just rejected your argument. If we find that he correctly rejected your argument, then it's an affirmance. Your Honor, we disagree with that characterization of the district court's analysis. But we're simply asking for an opinion that recognizes that the military has some interest in regulating its member's speech. At least where that speech goes to the core concern that Parker recognized, counseling disobedience. If we could go back to Judge Pillard's line of reasoning, I just want to understand where in the record there is support for this inference that Senator Kelly was actually counseling disobedience of lawful orders. Can you just walk me through the record evidence that supports that inference? On JA-115, the plaintiff cites the November 1st press conference miscomplaint and provides the link to the press conference. That press conference, we can take judicial notice of. And as I've already said, at the press conference, his phraseology of we meant to cut them off at the pass cannot mean anything other than, with respect to this National Guard deployment, counseling individual military members not to deploy. Now let me ask you, we're not looking at this on a blank slate. And for some reason, neither both parties cite Clawson versus the U.S. Ex-Royal Arms from 1896. But nobody discusses it. And if you'll bear with me, this was a, Arms was an officer of the Army on the retired list. He wrote a letter to his commanding general, who himself was getting ready to retire, using intemperate language, well, charging with the manufacture of false testimony and so forth, directed at Arms. All right, the general ordered him arrested. The case itself has to do with habeas, in other words, should he be released. Our very court, our predecessor court, the Court of Appeals of the District of Columbia, ordered him released. And the reason is, they talked about a retired officer. And let me just read, it's 19th century language, but anyway. Arms is an officer of the Army of the United States, entitled to wear his uniform and his law pay and such, and by express division of the statute law of the United States for the government of the Army, made subject to the rules and articles of war, and to trial by court martial, so on and so forth. Then he says, it cannot reasonably be doubted that the charges against Arms are of offenses against the military law, of which retired officers as well as officers in active duty may be equally guilty. Conduct to the prejudice of good order and military discipline. The statement was exceedingly intemperate and written to the general commanding the Army. Now, that was under Articles of War 62, which is now Article 134 of the UCNJ, which is what the Department of Defense Secretary cited. Larrabee, from my court, cites Claussen. And there is a line, I see a line, at least beginning with Claussen, who was retired and court martialed. Ben Parker was active and court martialed from the Supreme Court. Ben Priest was active and court martialed. And then you get to Larrabee, who was retired and court martialed. And I read these cases as a line saying that the plaintiff is certainly subject to court martial, that is, as a retired officer. And therefore, these lesser-included censure, reopening of the grade rank authority are necessarily included. That's how I see this case. We think that's exactly right. The court below thought that Claussen was irrelevant because it didn't deal with the First Amendment. It thought that Larrabee was irrelevant because it understood that as just being a matter of Congress's power. I'll say that Claussen doesn't mention the First Amendment. It doesn't talk about speech that is detrimental to good conduct and discipline. We agree with that as well, Your Honor. I think cases like Claussen and Larrabee recognize the broader point that retirees are part of the armed services as a formal matter. They have ongoing obligations as well as privileges and benefits. They can be recalled to active duty. And through their words and actions, they can undermine good order and discipline. So for that reason, they can be constitutionally subject to the UCMJ and to court martial jurisdiction. Even if that's true, that doesn't really grapple with the fact that this is sort of a new category. This is a retiree making statements. Parker v. Levy talks about active service members making statements. And the fact that the UCMJ applies to retirees doesn't really answer the question because the way these cases come up is somebody will be accused of conduct on becoming an officer or undermining the discipline in a court martial under the UCMJ. And then the defense is I had a First Amendment right to say that. And so that's kind of what we need to home in on. What are the contours of that First Amendment right? And for active duty service members, the court has said, the Supreme Court has said, certainly an active duty service member can't tell people in his chain of command, don't go fight in the Korean War. I mean, the Vietnam War, if you're ordered to do so, like if I were told to do that, I wouldn't do that. That for an active duty service member would not be protected by the First Amendment. It undermines and therefore he can be held accountable for undermining the discipline and the morale, et cetera. But there's no answer in any of these cases to what First Amendment standard applies to a retired service member. So the fact that the UCMJ applies to retirees, the fact that there's a provision in the UCMJ for office conduct on becoming an officer and a gentleman or undermining the morale, that's all fine and good. But none of these cases address what are the contours of First Amendment protection for a retiree. And that's the issue. And the government's position before Judge Leon was that Parker v. Levy applies, that's all you relied on. And all Judge Leon did was say, not likely to succeed on that because he's a retiree. You haven't addressed that. And the facts are so different. He said, don't disobey, I mean, don't obey illegal orders. So that's so different from what happened to Levy. It's actually quite simple if you look at it that way. We disagree with that. I might agree. You're right, at least as to the point about whether the accuracy of those inferences, that was not part of the report. What did you say? With respect to the accuracy of the secretary's inferences as to what the effect and what the intent of the speech at issue was, the district court did not rely on that, did not engage with that. The district court accepted the secretary's inference. He didn't accept it. He didn't address it one way or the other. But you relied on Parker v. Levy. And so we have to look at whether Parker v. Levy governs this. And there are reasons why it does not. And I apologize. I'm at a loss about this press conference because I don't know where in the record we get that Secretary Hegseth was relying on any particular press conference. And I don't understand what happened in that press conference based on this record. I mean, there's nothing that I can read in this record that talks about cutting them off at the pass. So I don't understand the context for that. I just don't understand how we can infer that Secretary Hegseth relied on any particular press conference. I think all this court needs to understand is, as I started with, I think the central letter speaks for itself. It was looking at a pattern of statements in conduct. And from that pattern of statements in conduct, the secretary made a determination, an inference, as to the nature and effect of that. Just from your perspective, what were the comments? I just want to understand what the government's position is on what were the comments. This would just assist me. It's a gap in the record, as far as I can tell. You are, and I do think that the central letter at JCCC 336 is the best, is the most complete. But it doesn't say anything specific. It just says, I infer this, but it doesn't say anything specific. And I'm just wondering, what is the government's position on what that was relying on? Is it, I mean, I don't need to cut you off. Go ahead and answer. I think the most relevant specific examples are what are laid out in the central letter that we've been going through. So, if you look at, I'm looking at the version that, I know it's twice, at least, in the record. I'm looking at the version at JA 100, the number paragraph. And the second number paragraph refers to National Guard deployments and counter-narcotic operations. So, those are the categories of orders that you're referring to. Yes. I mean, that the secretary is referring to. And that's in your view. And then we have in the complaint, this specific page, where you were citing, or maybe Judge Henderson was citing, maybe it's JA 115. You have this quotation in the, excuse me, I think this is the complaint, saying, yeah, saying in paragraph 49 on JA 115, this is the CNN interview saying, if there were a second strike to eliminate any survivors, that constitutes a war crime? Ask the interviewer. Senator Kelly responded, it seems to. He was then asked, if you received that order, would you have carried it out? Senator Kelly replied, no. So, am I right that you are taking together the video in November, in which Senator Kelly counsels service members to remember their duty, or remember that they are not obligated to obey unlawful orders, and putting that together with Senator Kelly's view here, that the drug, the second strike to eliminate survivors in the Caribbean was an unlawful order? I'm not up here to say that this particular reference in the complaint is what the secretary wanted. And how I should read the center letter, and in particular, that paragraph. I'm also trying to understand what the statement, what the counseling disobedience to unlawful orders even is. Because I do think we, as a court of appeals, have an obligation to identify the speech at issue. And I take it, so let's say, maybe I'm going to approach it in a different way. If you just had the video in which the various members spoke about the duty of a service member to not to obey unlawful orders. If that were in isolation, without the press conference, or other commentary, that would not be subject to discipline, would it? Your Honor, I can't say what inference the secretary would draw from just the don't give up the shit video standing alone, if that was the only thing that was at issue.  I think that was a core part of the pattern of conduct. I understand your theory to be that it's that in context. But if I'm saying take away the context, I mean, that is something that's taught at Annapolis, year in, year out. And I'm just saying, if a retired service member, at the historical moment that we're in, says, gosh, I don't know what's coming tomorrow or next month. But it occurs to me, because we have a president whose MO is, in part, making people worry a little bit that he might do anything. I mean, he himself, the president himself says that, right? So, if he tells you to do something that you know is unlawful, I'm just reminding you not to do it. If that's what this is, it's not protected by the First Amendment? It's an abstract statement of a principle? Your Honor, the abstract statement of the principle is that patently unlawful orders should not be followed, to start with. But as for this, whether the don't give up the shit video standing alone is going to be enough, I think there's other context there. If you look beyond just the, you can't refuse illegal orders, when that video is talking about the government pitting American soldiers against American citizens, I think it would be unsurprising if the Secretary drew the inference that that was within respect to the National Guard deployments. And with a wink, wink, and a nudge, the clear implication here was that you don't need to listen to an order related to the National Guard deployment. Why is that the clear implication? I mean, when I first saw this video, I thought the clear implication was troubled times, very difficult duties on the soldiers of service members, and gosh, it's hard to envy them their duty to make these distinctions. But service members do and always have had an obligation, well, not always have, since Nuremberg has had duties to disobey unlawful orders, period. If that's what I understand the statement to mean, is it unprotected? And if so, why? Respectfully, it's not the province of the court to de novo attempt to determine what the fair inference of this statement is. This court was very clear in Priest that the way that the First Amendment balance cashes out is that the fact finder, the military fact finder, the one with the professional military judgment and experience, they are the ones that are to weigh First Amendment interest against the tendency of speech to undermine response to command. And it is only individuals in the military that can understand how that kind of speech can undermine command. What you said can't be correct because the Supreme Court addressed the First Amendment rights of a commissioned officer in Parker v. Levy. So we don't just let whoever the military adjudicator is just decide these issues of First Amendment concern. That's something that federal courts are well able and are duty bound to address. But I actually am interested in this line of discussion we've just had with Judge Pillard in terms of what inferences can be drawn and also your line of discussion with Judge Henderson. Because at bottom, this finding by the Secretary relates to whether the statements would be prejudicial to good order and discipline. And so in order for Senator Kelly's statement, you should not obey illegal orders to have the inference that the Secretary draws. It means the hearer, that means the soldiers, would have to understand him to be telling them to disobey lawful orders, even though he said the opposite. And that means, based on this whole discussion that you've been having with Judge Henderson and Judge Pillard, that the hearer, the average soldier who watched the Don't Give Up the Ship video, would have to be thinking, I'm putting this in context with his press conference where he said something about cutting people off at the pass. And I'm putting this in context with his statement when he was interviewed and asked about this boat strike on the two people clinging to wreckage, would you have obeyed that order? He said no. So it assumes that the average soldier would know this whole context in order to draw that inference and then have it affect prejudice, have it be prejudicial to good order and discipline. And that just seems implausible to me. Again, Your Honor, respectfully, we just don't think the plausibility or the accuracy of the Secretary's determinations here are properly on appeal, because the district court did not engage with that. He did not analyze that. The reason, again, we had this discussion, it's properly before us, it's because you relied on Parker v. Levy, and you said this case is governed by Parker v. Levy. And so we have to examine how this is similar or different from Parker v. Levy. It is different because he's a retiree and not an active service member, as in Parker v. Levy, and the facts are so different. Because what Levy did is so different from what Senator Kelly did. So it's before us because you relied on Parker v. Levy. You cannot read Parker v. Levy in isolation. The fact, the Chief Justice wasn't talking about retired military. He didn't have anyone retired in front of him. He didn't say, oh, and by the way, this applies to retired officers as well. That's what Levy did. But I would like to read what he said about Article 134, again, limited to active, because that's what was before him. While there may lurk at the fringes of the Articles, even in the light of their narrowing construction by the U.S. Court of Military Appeals, some possibility that conduct which would ultimately be held to be protected by the First Amendment could be included within their provision. And we deem this insufficient to invalidate either of them, Article 133 or 134. His conduct, that of a commissioned officer publicly urging enlisted personnel to refuse to obey, in that case, orders that might send them into combat, was unprotected under the most expansive notions of the First Amendment. And then you read Levy, and I don't know how you can reach any conclusion other than this is a smooth line. We agree, Your Honor. We think that that line started in the mid-1800s when retirees were included on the retired list and subject to court-martial jurisdiction and then used TMJ since its enactment. And for that reason, we think that the district court's rule, it can't stand, and the court should be voted for that reason. So, without the Don't Give Up the Ship video, if Senator Kelly had given the interview saying, answering the interviewer's questions about whether he thought it was lawful to target and kill the remaining survivors clinging to the wreckage of the ship, and he said, if I had been ordered to do that, I wouldn't, would that subject, on your theory, would that subject Senator Kelly to disciplinary censure? Your Honor, I think that standing alone, it's safe to assume, would not be enough. I can't, I'm not going to stand here today and make representations about what inferences the military professionals might draw, but that would be a very different case. And as I started, we think the central letter not only speaks for itself, but it's very clear that this is about a pattern in totality of conduct, not any one line or any one statement taken in isolation. So, it's, but it really, I mean, it's safe to say that the Don't Give Up the Ship video is essential to your theory, because the pattern of a senator who's a former member of the military commenting, and he has committee assignments that put this within his purview, commenting on what he thinks about what the executive branch, what the military is doing. But that is protected in your view. It's the addressing of service members in the video that is essential to your case. I don't know if I want to use the word essential, but I think, yes, a very important feature of the video is that he invokes his former rank and spoke directly to service members. That is quite close to Parker, where you are speaking directly to service members, and it was the secretary's inference, and again, we've gone line by line through the letter, but it was the secretary's inference that this was a wink, wink, and a nod. And like, when I say you can't refuse legal orders, I understand the secretary, his inference generally to be that that was with respect to specific ongoing operations, and it is an encouragement to disobedience. And so, yes, the video is a core part of the letter, as it makes clear. Is it important in your view to the secretary's letter, and I'm looking at JA100, where the secretary concludes, when viewed in totality, your, he's speaking to Senator Kelly, your pattern of conduct demonstrates specific intent to counsel service members to refuse lawful orders. Is the specific intent finding, in your view, playing any role? Your Honor, I think the legal standard is really whether that speech has a tendency to undermine good order or discipline, and so I think finding a specific intent to undermine counsel disobedience is essentially the same thing. So you're saying it's not necessary. It's overkill, but it's not necessary. Yes, it's a tendency. It's an objective test, not a mens rea test, a tendency to undermine good order. I think that that was how this will put it in priest that it's not an effects test. It's whether the military fact finder determines that the speech has a tendency to undermine effectiveness of response to command or endanger undermine military loyalty, discipline, or morale. That's from repeating the Parker standard in part. But I thought you said it's not an objective test, but that is an objective test, a tendency to undermine. It's more like a, I mean, you look at the speech and the military. It's not objective, maybe in the sense that, in your view, you defer to the military fact finder's assessment, but it's not looking to the state of mind of the speaker. I certainly don't think the state of mind of the speaker is necessary. No, I think, again, the military has an interest in maintaining discipline and order among active duty service members, as well as retirees who may be recall and may themselves be in a situation where they are once again in active command. And so it points both ways, the interest in maintaining order and discipline, but I think it's primarily focused on that tendency to affect active duty service members. I think it's a challenging question how to assimilate Larrabee to this situation, because Larrabee is about whether retired service members who are retired, but still, they're not discharged. They still have a link, ongoing link to the military, which is why we're here, that they can be court martials. They have a duty to obey in order to be recalled, and historically, they have remained subject to court martial, and so that is why Secretary Kelly is subject to court martial. I take you to be saying, and therefore, they have equal effect, that retirees are in the same position as active duty service members with respect to other constitutional rights, other than whether they have the trial rights of a civilian or the trial rights of a service member. What gets you there? Because there's no cases that we have about speech rights of retired service members. And the entire reasoning in Larrabee is about the history of court martial jurisdiction. It's not about speech. Correct, Your Honor, and Larrabee was a constitutional holding. It held that Congress could constitutionally, under the Make Rules Clause, subject retirees to court martial jurisdiction. In court martial jurisdiction, it does affect how other constitutional rights would apply. In Larrabee, the court was focused on the jury trial right, and noted how if you're in court martial jurisdiction, that's not what we have going on. So one thing that's interesting to me about Larrabee, and I think you're right, it was based on the Make Rules Clause, and that's a constitutional holding. But the focus of that was who is part of the land and naval forces for purposes of the Make Rules Clause. And one thing that's really interesting to me in Larrabee is that that opinion says that people who receive a draft notice are part of the land and naval forces. Because if you refuse to comply with your draft notice, you can be court martialed, right? Larrabee says that. And so, to me, that's a very telling statement in Larrabee that kind of proves that this does not address First Amendment concerns. Because if you received a draft notice, as soon as you received it, you'd be subject to court martial under the UCMJ if you refuse that notice. But it doesn't suddenly change your First Amendment rights so that you can't criticize the military. And our position has never been that Captain Kelly does not enjoy a broad right to criticize military policy. No, correct. But with respect to Larrabee, it does say that retirees are subject to the UCMJ. And it does talk about these constitutional rights. It does not address the First Amendment rights of retirees. And it is very telling to me that it talks about this example of people who just received a draft notice. You're a civilian sitting at home. You received a draft notice. You decide not to comply. You can be court martialed. You have become a member of the land and naval forces for purposes of the UCMJ, even though you are a civilian. And to me, that's very telling because it cannot possibly be that you sitting at your home and receiving a draft notice has now altered your First Amendment rights so that you cannot criticize the military. That you couldn't say exactly what Levy said as a civilian or exactly what Priest said as an officer. Like, as a civilian, you can say those things, right? And so therefore, Larrabee cannot possibly address the First Amendment rights of retirees because of that example that's in Larrabee itself. I'm not sure that I agree with the relevance of the hypothetical, but I would say if… It's not hypothetical. It's in Larrabee. If one was drafted and became a member of the armed forces, I would think that their speech rights are significantly limited as they are then part of the military. Thank you. So you're sitting at your home. You receive a draft notice. You immediately have lost your First Amendment right to criticize the military? I think I would be… I think I would be subject to the UCMJ and the standards of conduct that govern members of the military. Absolutely. That's true. Larrabee says that. And do you agree that you also, as soon as you receive that draft notice, you open the letter, at that moment, your First Amendment rights have changed? I think, yes, the moment that you become part of the land… So, yes, when you open that letter, you no longer can criticize the military. You're not allowed to say, if I was going to go to Vietnam, I wouldn't obey an order. You're not allowed to say that as soon as you open your draft notice? I think once you drafted, you would be subject to the rules of conduct that govern members of the military. Your answer is yes. As soon as you open your draft notice, you cannot say, if I went to Vietnam, I wouldn't… I wouldn't obey the orders to go. You certainly could not counsel disobedience to other service members once you become a part of the armed forces. I'm just using the facts of Levy, okay, which were not protected under the First Amendment for him. If you open your draft notice in your home, you suddenly can't say that to, let's say, to an enlisted person. Your Honor, what someone does in the comfort of their own home is far afield from the facts in Levy. That is absolutely… You're just citing the hypothetical. I think… I think the question is, as soon as you receive your draft notice, you become subject to the UCMJ to the extent that if you don't show up, you can be court-martialed. And you're saying that being subject to the UCMJ is coextensive with the First Amendment protections of an active duty soldier. So I'm asking you, if you receive your draft notice and you're now subject to the UCMJ, as soon as you receive it, have your First Amendment rights changed so that you're not allowed to say exactly what Levy said as an active duty soldier? If I went to Vietnam, I wouldn't obey those orders. Could you do that? Can you say that as a civilian who just received a draft notice? Yes or no? You know, I think we're conflating a lot of things here. No, I'm not. I'm being very specific. And I see that you're not wanting to answer my question. If at the moment of receiving a draft notice, if I become part of the land and naval forces, if I am part of the armed forces, if I am under Larabee constitutionally subject to court-martial jurisdiction in the UCMJ, and I am governed by those standards of conduct… You can't say that. You can't say what Levy said. You cannot counsel disobedience to other soldiers. Absolutely. Okay. Thank you. I think that kind of proves the point that that can't possibly be the correct interpretation. All right. We'll give you a couple of minutes to reply. Mr. Miser. Good morning, Your Honor, and may it please the court, Ben Miser for Senator Kelly. The punishments imposed on Senator Kelly are textbook retaliation against disfavored speech. The censure letter says on its face that it's targeting the senator for his public statements, including, among other things, his criticism of the military leaders for firing admirals and generals, his criticism of them for surrounding themselves with yes-men, and it even attacks him for saying that he will always defend the Constitution. The senator made all of his statements, including the Don't Give Up the Ship video, as a member of the Senate Armed Services Committee and the Senate Intel Committee, which gives him a constitutional duty to oversee the military. The fact that he is also a highly decorated war veteran who receives a military pension does not give defendants license to retaliate against his protected political expression, and this court should affirm the district court's preliminary injunction. I want to jump right in, Judge Henderson, to a couple of your questions that go to the heart of the case. First, about Larabee. We don't contest that under this court's binding decision in Larabee, the senator is a member of the land and naval forces and has military status. But as some of the other questions illustrate, the fact that he is in the land and naval forces says nothing about the First Amendment protections to which he's entitled. The court in Parker said that even active duty service members have First Amendment speech rights. So we know from Parker that even active duty has speech rights, and we know nothing from any case, because no court has ever grappled with the question of what First Amendment rights retirees have. What we do know when it comes to... We do in Clawson. Pardon? We do in Clawson. Now, I grant you that the First Amendment was not raised as far as we know in that, but I find it hard to imagine that the language that I quoted from that in a letter sent to his commanding officer, not in a press conference, not in a TV video, not in an interview, that if that were revisited, a court would say, oh gosh, we forgot about the First Amendment. Well, I think Clawson, having been decided I think in 1895 or sometime in the 19th century, did not raise the First Amendment and does not grapple with what is now modern First Amendment doctrine. And modern First Amendment doctrine says, and the Supreme Court reiterated this just a few weeks ago in the Child's case, that there are few and narrow categories of unprotected speech. And the categories of unprotected speech, like defamation and fraud and incitement, are narrowly drawn, and courts shouldn't... What do you do with the language of the Chief Justice that it is... I can't recite it again, but... You know the language I'm talking about. Well, go ahead. I don't want to take up your time. I think that every justice of the Supreme Court agrees that the categories of unprotected speech are few and narrow. I will ask you this. His conduct, that of a commissioned officer, you have to add in retired, publicly urging enlisted personnel to refuse to obey orders which might send them into combat, you can read that, which might send them in conflict with American citizens, two of whom killed two of the National Guard members, was unprotected under the most expansive notions of the First Amendment. There are two responses to that, Your Honor. One on the facts and one on the law. To start with the law, as the questions from Judge Pan pointed out, Parker relies entirely in his reasoning on the fact that the defendant in that case was active duty. An active duty officer's... But it would be dicta if he said, and by the way, this applies to retired. Do you agree with that? I certainly agree with that, but the thrust of the reasoning was also very much about the fact that Mr. Levy was, in fact, a commanding officer who was supervising officers on base. He was speaking on base to active duty service members, a very different situation. And no, neither Parker nor any other case in the history of all the courts of the United States has ever said that retired military service members are subject to the same First Amendment standards as active duty. Second, on the facts, of course, as other questions this morning have illustrated, the senator did not counsel disobedience of lawful orders. He simply recited the bedrock proposition of military law that every service member learns when they enter the military, which is that service members can refuse illegal orders. The transcript of the video is at pages 116 to 117 of the joint appendix, and this court will not find in that transcript any reference to any particular orders. And instead, what every member of the video, including the senator, says repeatedly in the video is that you do not have to follow unlawful orders. And that is a hornbook proposition of military law. Okay, what about the press conference? He wasn't happy with just producing this video. The press conference that you were reciting... By the way, I have found that... Did he call this press conference? The defendants have never raised this press conference, and so it has not, to this point, been part of the record. But the press conference was conducted after the president had... And did he call it? I'm just asking that. I don't know the answer to your question, but there was a press conference by Senator Kelly, as a senator of the United States elected by the voters of Arizona, after the president of the United States and the secretary of defense had attacked him, accused him of sedition, and retweeted tweets calling for his... Do you agree with the answer that your colleague gave, that as a retired commissioned officer, his commanding officer is the president? No. Retired commissioned officers do not have a commanding officer unless they are recalled. And then once they are recalled, they have a commanding officer, but Senator Kelly does not have a commanding officer. And I think it's important to underscore that he is Senator Kelly, and it would be quite a separation of powers problem to treat a senator of the United States as under the command of the president of the United States. We have, of course, other constitutional claims in this case that the district court didn't reach. I also think, Judge Henderson, that it would be quite extraordinary under the First Amendment and other constitutional doctrines to allow the executive to punish a senator for holding a press conference. His job as a member of the Senate Armed Services Committee is to oversee the military, and Bond v. Floyd says that... I don't think anybody's arguing that. What he says is a press conference. And Bond v. Floyd, which was the Supreme Court decision regarding Julian Bond, says that legislators have to be given the widest latitude to speak freely on matters of public policy. And when the president of the United States is retweeting tweets calling for the hanging of a sitting senator, it is natural that the senator is going to have a press conference. Is your argument that his role as a senator is paramount to his being a commissioned officer? No, and in fact, I think it's an important point that the rule that the defendants are offering in this case would reach all two million of the retired service members in this country. And this court has before it seven amicus briefs, several by veterans groups, that not only underscore the importance of veterans being able to contribute to public debate, but that in particular... They don't have the bully pulpit that a U.S. senator has. I mean, they could go to the American Legion meetings and criticize the president, the secretary, anyone they want, but nobody's going to even know about it. I would call the court's attention to the amicus brief from National Security Leaders for America, which includes quite an extraordinary declaration. And that declaration recites retired service members, some by name and some anonymously, who attest that their speech is now being chilled because of the actions of defendants in this case. They are afraid to speak freely on matters of public policy. They are afraid to post on social media their views about the secretary of defense because they are afraid for their pension. And that is an extraordinary chilling effect. And in fact, what defendants have said in their brief quite starkly is if retired service members, including Senator Kelly, but others as well, don't want to have to be obedient to the secretary of defense, then they can just give up their pension. And that position is as much an insult to the service that veterans have given this country as it is to the First Amendment. Who said that? That is the position of the defendants in their brief. They offer an unconstitutional conditions argument that if Senator Kelly does not want to be obedient, then he should give up his pension and resign his commission and give up his pension. But that is a distortion of the unconstitutional conditions doctrine, and it is also inconsistent with the First Amendment. There's also been considerable discussion this morning, and this gets back as well to your question, Your Honor, about whether or not Judge Leon, the scope of the district court's ruling, and the defendants have distorted that ruling in two ways. First, they say that Judge Leon adopted a categorical rule that treats retirees as the same as civilians in all circumstances. And that is certainly not what the district court held. And in fact, at JA 37, which is Judge Leon's ruling, he said that the government simply doesn't have the same interest as to retirees as it has to active duty service members. So his ruling was not a categorical rule that the government, that the defendants can never reach the speech of retirees. He simply rejected the argument that the defendants were making below. And that argument, as the questions from Judge Pan have already laid bare, was a categorical rule that when the Secretary of Defense determines that a veteran, a retired service member, has said something that is contrary to discipline and good order, then they can be punished. And the court has no room to second guess the Secretary's judgment. Judge Leon rejected that categorical rule because there was no case support for it. And that is all Judge Leon held. The defendants have also repeatedly said that Judge Leon didn't dispute the Secretary's inferences as to the import of Senator Kelly's speech. But again, as Judge Pan's questions illustrate, Judge Leon had no occasion to second guess that. For one thing, the passage that defendants have quoted is in the context of their extensive exhaustion and reviewability arguments, all of which they have abandoned in this court. It did not relate to the conclusions themselves that Secretary Hyslop has drawn. Moreover, the position that defendants were proffering was about the effects of the speech. And Judge Leon said, I don't need to question your inferences as to the effects of the speech because your arguments on the merits as to the ability to reach retirees lack case support. And that is all he concluded. It was not a conclusion that retirees are the same for First Amendment purposes as active duty service members, nor is Senator Kelly asking for a ruling in this case that treats retirees the same as civilians in all circumstances. It, of course, is the case that once the military has determined to restrict the speech of a retiree, then the question becomes whether or not there's a compelling state interest and whether or not it's narrowly tailored to advance that compelling interest. So the means and test that applies to viewpoint discrimination may leave room in future cases for the military's interest to be taken into account. But the defendants have never tried to meet that standard here, and so there's no occasion for this court to reach it. So you would apply, and I write to understand you to say that you would apply ordinary First Amendment analysis and also acknowledge that the military may have prerogatives, interests that in this regarding the speech of retired service members and its potential disruptiveness that are greater than the government's interest in the speech of any civilian. That's precisely correct. And do you read Parker versus Levy to announce a different test or that same test? I don't read Parker versus Levy as addressing the circumstance other than. I think it is just a different First Amendment analysis as to active duty service members. And I think that that is illustrated not only by Parker, but in the Court of Appeals for the Armed Forces case law that follows from Parker, where a different standard is applied to active duty speech. But none of those cases treat active duty service members as altogether lacking First Amendment rights. Of course, as Parker said, active duty service members have First Amendment rights. Importantly, though, I guess your answer was you would apply ordinary First Amendment principles, but we, we, in deciding this case, do not have to announce what the test is. It hasn't been litigated or briefed, so I would be uncomfortable with that. I see this as the only thing before us is the claim that Parker versus Levy controls this case. And if we agree with Judge Leone that it does not, that's an affirmance without us having to articulate what is this standard for military retirees? Is it the same as for civilians? Is it the same as, well, we don't think it's the same as active service under Parker versus Levy because the reasoning, as you said, is so different and clearly excludes retirees. It might, it might not, but Parker versus Levy does not address it. But I think that we would not want to articulate what this new standard would be. Maybe it's not new under, you know, the military court rules, but it would be new law that we'd be making in a posture we have no briefing on that. That's precisely correct, Your Honor. This court's task is made easy by the way the government, the defendants have litigated this case, not only in the court below, but also in this court, pressing only a categorical rule that entirely lacks any case support whatsoever. This case will be back before Judge Leone for summary judgment proceedings and defendants may make additional arguments then. But this court's task at this point is quite easy. And I just think it's important to underscore that when defendants argue that either Judge Leone or Senator Kelly is asking for a rule that ties the military's hand and makes the military unable to reach the speech of retirees, that's simply not the case. I want to ask you just to put it on the record. What do you think our standard of review is? On the legal question, it's de novo. Thank you. What is our standard of view on the, on what Senator Kelly said? Excuse me. The question of what Senator Kelly said. I think that you are precisely correct, Judge Pillard, in your questions regarding Bose. I think that this is a tailor-made situation for the doctrine of constitutional facts. It's bizarre that we have to reach that doctrine here when defendants are asserting that Senator Kelly said something that he very plainly didn't say. And so that is what Bose is built for. And it's not just Bose. It goes all the way back to Crowell v. Benson. The Supreme Court has always said that you don't allow an agency fact finder to make facts that then are adjudicative facts that are then determinative of the legal question. If this court were to just entirely defer to the contrivance that Senator Kelly counseled disobedience of lawful orders, then that would answer the constitutional question. But the record is very clear that he didn't say that. And so it's entirely within this court's discretion under the doctrine of constitutional facts to say he didn't say that. So if there are two reasonable ways to read the record, one is that Senator Kelly said, service members, you don't have to obey unlawful orders. And then weeks or months later, he says, in my own view, the orders to shoot the people clinging to the wreckage in the Caribbean were unlawful. And I don't make any points or anything in the record, but something about the deployment of National Guard members to American cities is unlawful. One way to read that is that he was saying those orders are unlawful. Youth service members shouldn't comply with that. So if that's one way, we could read the record. And if there's another way we could read the record, which is Senator Kelly saying everyone knows you have a duty or that you need not obey unlawful orders, that's a really important thing to keep in mind. And it's a tough duty to bear at this moment when a lot of unprecedented things are going on with big states. And then in his role later, months later, he gives his own view of how he would discharge that duty if he were a service member. And he says, if I were still active duty, I would not obey the order to kill the two survivors clinging to the wreckage. And again, I don't know where it is in the record, but I also would not send National Guardsmen to American cities. And there's no connection between those. So if those two are available ways to read the record, why should we not defer to Secretary Hegseth's reading, which is apparently the first reading that I gave? You should not for two reasons, Your Honor. First, the Supreme Court has made clear in cases like Snyder v. Phelps that inferences should be drawn in favor of protecting speech, not restricting it. Second, if your question is about whether or not there's a particular category of military deference that ought to kick in, the answer is no. And I think this court's decision in the Emory case makes clear that when this court is deferring and the Supreme Court is deferring to the military, it defers in particular on questions of allocating resources, who serves in what role and where. But on constitutional questions, Emory says we don't defer. We interpret the Constitution. And Secretary Hegseth doesn't get to decide the scope of First Amendment rights. I also think that as you were sort of laying out the factual circumstances of the available inferences, it underscores the importance of protecting the speech of veterans because retired service members and veterans who have served in combat have a special role to play in public debate on issues of national security and military policy. And I, as a citizen, value the speech that you just described of a decorated war hero testifying to the public about how he interpreted his duties as a service member and what sort of orders he would follow and not follow. And that speech is valued by the First Amendment, not silenced by civilian appointees who are offended by it. All right, I agree. Thank you, Your Honor. Mr. Bailey, why don't you take two minutes? Thank you, Your Honor. I'll be brief. So I'd like to make three quick points. The first one is that I just heard a reference from my friend on the other side to all veterans. We are not talking about all veterans writ large. We are talking about retired officers that maintain an ongoing and formal relationship with the military and benefits, privileges and obligations that come to it. But that could include veterans. We're talking about retirees. We're not talking about the much broader population of veterans. Some veterans are retirees. It's not incorrect to say that this affects veterans. It does not affect all veterans. That is incorrect. That was my only point. The second point I'd like to make is I'm sorry, it does not affect all veterans because all veterans are either active service or retirees. No, there's a third option that you can separate or discharge. That was that was the option that Senator Kelly did not take. And that is why he has obligations to the military and privileges and benefits. But the second point is there's been a lot of talk. Sorry, I know this is a little beside the point, but if you're not an officer, your options on retirement are you just get discharged. Whereas if you're an officer, you can have this special retired status. I actually believe it's tied the number of years. I don't know if you need to be an officer to retire. But so many veterans may have like if you're not active, you're discharged honorably or otherwise. Put a little more concretely, I believe there to be around two million retired officers and around 17 million veterans. That would include individuals that are separated discharge. So the much broader category individuals who separate from military. We're not talking about them because we're not claiming that they have continuing and ongoing relationship to the military. Two million retired officers. Yes, I believe that's. And then there may be retired veterans who also continue to receive benefits. I'm seeing the broader broader group, I think, is around 17 million veterans, which would include individuals who were separated or discharged. But some of those veterans, if they serve long enough, might also receive benefits. They may also have that continuing link. Yes, some might be. I don't know the exact numbers, but my point is, is that we're not. I'll put it differently. We are not talking about individuals that have separated or discharged from the military. We're not claiming that they have an ongoing relationship or continuing restrictions on this. And we don't the two and 17 doesn't actually necessarily track that. We don't really know that number. OK, go ahead. Sorry. My second point is a lot of talk about the full universe of the statements that issue here. And I was not trying to be difficult when I was up here earlier when I was struggling with the central letter, because the district court did not have the full universe of statements before it. The district court was looking at the central letter. There is no record below in the district court that shows the full context. So to the extent the court thinks there needs to be some sort of line by line parsing or analysis of the full context, that is just an impossibility on this record. And that's why we think the much more sensible course is that to the extent the court thinks this court that the district court needed to look at more context, more statements needed to engage in the deference analysis. That's the province of the district court to do in the first instance. And it requires remand. This is sort of a nod, nod, wink, wink. And I can imagine if somebody had said, you know, and was really famous on TV for having said, you know, these are unlawful orders, these are unlawful orders referring to specific orders. These are lawful. And then the next day puts out a video saying, you know, you have no obligation to obey unlawful orders that might kind of put that together and say, that's really what he's saying. But here, the details about what Senator Kelly thinks are unlawful orders come months later. Somebody who's a service member who's listening to that video, is there any basis to think that they would infer when he says unlawful orders that he's characterizing some category of what the secretary thinks are lawful orders to be unlawful? Is there any reason to think that, given this chronology? That was the secretary's judgment. I thought all this happened in November and December. He started with something that we don't know about in July, because they say from July to December. But the video, the interview, the press conference, aren't they all in November and the 1st of December? I believe that's right, Your Honor. The central letter refers to a wider period of conduct. I think the three instances that you're referring to are November and December. I think the point is that he looked at the totality and drew an inference that it was counts of disobedience. But isn't it important to know whether anybody listening to the video at the time it was made would actually draw that same inference? I assume that's one of the questions the secretary considered when he was making this determination. I don't have the military expertise, and frankly, this court doesn't either, to determine how this statement could, in fact, undermine discipline and order. We have an obligation to figure out what was said. And where I started this point was simply that we just don't have a complete record, and to the extent you think there needs to be more analysis, it requires room and brochure. That's our position. And you had a third point, and I know I've used up a lot of your time by asking additional questions. You should make your third point. I appreciate the time, and I'll keep this quick. My third point is simply, at Larrabee, I think it's most helpful if we take a step back. It would be highly anomalous for this court to hold that military retirees can be stripped of their jury trial right and put in court martial jurisdiction, and yet they somehow, in the words of the district court, must receive full First Amendment protection. That would be highly anomalous. We think that rule is clearly wrong. And the firm is based on a rule that is instead looking to needs and balancing, or is instead looking to the appropriate level of deference, or is instead doing a review of the full universal statements. That's a review that has to happen in the first instance in the district court, and this requires reversal. That's it for today, Kate. Thank you. I do have one question. Is it in your brief that you think there's an alternative that they can just not get their retirement pay? Your Honor, I want to make sure I understand the question, but we do assert in our brief that he is free to separate and discharge from the service if he no longer wants to have any obligations associated with being a member of the Armed Services Corps of Courts. Did you say what your colleague said? I don't remember it, but did you say what your colleague said in your brief that the option retirees have is to give up their pay and their rank? No, Your Honor. We said that he was free to resign his commission if he did not want to remain part of the service. Isn't that the same thing? Resigning your commission and your rank is giving up your retirement pay. There is a difference between retirement pay and the honors of your rank, grade, privilege, security, uniform, the benefits that come with it. That would be part of it. You're saying that if he wants to speak freely, he should discharge himself, which means giving up his retirement pay, giving up his rank, giving up all of those things, that that is the price that our military retirees and veterans should pay if they want to speak freely? If a retired officer wants none of the obligations associated with service, he must give up his rank. If a retired military officer wants to say, you have no obligation to obey illegal orders, in your view, he should leave the military, give up his retirement pay, give up his rank, give it all up? No, but if he wants to violate NCMJ and counsel disobedience… No, so in other words, he can say that. Over time, he can say that. Your Honor, I've said several times that context matters. If he wants to go teach reports at Annapolis and deliver abstract legal education… Okay, I think you're just debating my question. Well, Your Honor, context matters, so I can't answer this… Okay, this very context. If Senator Kelly wants to tell active duty officers, do not obey illegal orders, you think he has to separate from the military, give up his retirement pay, give up his rank? The pattern of conduct that we're talking about here? Absolutely. So your answer is yes. So your answer to Judge Henderson's question is yes. If a retired military service member wishes to say things in the public sphere about military policy, don't obey illegal orders, they have to give up what they've earned by being military service members serving their country. They have to give that up in order to say these things. That's your position. If a retired officer wants none of the obligations that come with membership in the military… In other words, yes. …they have to give up their benefits. In other words, yes. No. I can't answer the question without… Why can't you answer the question? I'm asking very specifically. I've said many times that one statement out of context in the abstract, I can't assess… We're not out of context in the abstract. We're talking about a very concrete example that I'm giving you. What Judge Henderson asked you is, is it true that if a military officer wants to make statements in the public sphere about obeying or disobeying illegal orders and things of that nature, you say they have to give that all up? They have to give their rank, their pay, their retired status in order to say those things because they're obligated not to say those things as officers. That's your answer. And I'm pointing out to you that these are people who serve their country. Many of them put their lives on the line, and you're saying that they have to give up their retired status in order to say something that is a textbook example taught at West Point and the Naval Academy that you can disobey illegal orders. And I told you that said that in the context of being taught at West Point and the Naval Academy would be entirely fine. But if the Secretary determines that in context that statement was made to counsel active duty service members with respect to specific ongoing operations in a way that goes to the heart of the military's interest recognized in Parker, then no, they do not get to maintain all of the benefits, rights, and privileges associated with their rank and none of the obligations. And so your answer is yes, Senator Kelly should give up his rank. I don't think you have to answer that. But if you did, you should throw in the fact that he's a senator with a bully pulpit. I think I've answered the question.
judges: Henderson; Pillard; Pan